William CONDON, Plaintiff–Appellee,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Defendant–Appellant.

Leatrice BRODNER, Plaintiff–Appellee,

v.

Otis R. BOWEN, Secretary of Health and Human Services, Defendant–Appellant.

Nos. 1217, 1218, Dockets 87–6241, 87–6243.

United States Court of Appeals, Second Circuit.

Argued May 20, 1988.

Decided July 27, 1988.

Carlotta P. Wells, Office of the General Counsel, Social Sec. Div., Dept. of Health and Human Services, Baltimore, Md. (Stanley A. Twardy, Jr., U.S. Atty., D. Conn., New Haven, Conn., Donald A. Gonya, Chief Counsel for Social Sec., Randolph W. Gaines, Deputy Chief Counsel for Social Sec. Litigation, A. George Lowe, Chief, Disability Litigation Branch, Dept. of Health and Human Services, Baltimore, Md., of counsel), for defendant-appellant.

Whitney M. Lewendon, New Haven, Conn. (Coan, Lewendon and Royston, New Haven, Conn., of counsel), for plaintiffs-appellees William Condon and Leatrice Brodner.

Before MESKILL and WINTER, Circuit Judges, and STEWART, District Judge.[*]

[*] Honorable Charles E. Stewart, Jr., United States District Judge for the Southern District of New

MESKILL, Circuit Judge:

This appeal raises the question of whether interim payments issued by the defendant-appellant, Otis R. Bowen, Secretary of the Department of Health and Human Services (the Secretary) pursuant to the Social Security Disability Benefits Reform Act of 1984, Pub.L. No. 98–460, § 2(e), 98 Stat. 1794, 1798–99 (1984) (the Reform Act) are "past-due" benefits within the meaning of section 206(b)(1) of the Social Security Act, 42 U.S.C. § 406(b)(1) (1982) (the Act), for the purpose of awarding attorney's fees.

Two actions, *Condon v. Heckler,* Civ. No. N–84–118, and *Brodner v. Bowen,* Civ. No. N–84–252, were consolidated for the purpose of ruling on the motions for attorney's fees because they presented the same issue and the same attorney represented both plaintiffs. The United States District Court for the District of Connecticut, Daly, *C.J.,* decided both cases, holding that interim payments are past-due benefits.

We affirm.

## BACKGROUND

Plaintiffs-appellees William Condon and Leatrice Brodner were found eligible for disability insurance benefits beginning in 1974 and 1972, respectively. After a subsequent review of their claims, however, the Secretary determined that Condon was no longer entitled to benefits as of October 1982 and that Brodner was no longer entitled to benefits as of March 1983. Hearings before an administrative law judge confirmed the determinations that plaintiffs' disabilities had ceased. Plaintiffs subsequently filed complaints in federal court requesting review of the decisions to terminate their benefits.

In October 1984, however, the Reform Act was enacted. Section 2 of the Reform Act provided that the medical improvement standard is to be applied to requests for judicial review of termination of social security disability benefits that were pending on September 19, 1984, as were the plain-

York, sitting by designation.

tiffs', and that such cases were to be remanded by the courts to the Secretary for further review. Accordingly, the district court remanded both actions.

Section 2(e) of the Reform Act provided that claimants could elect to receive interim payments during the period while the Secretary was reviewing their claims. These interim payments were subject to recovery as an overpayment if the Secretary determined that the claimant's benefits had been properly discontinued. Both plaintiffs elected to receive these payments.

Subsequently, the Secretary ruled that both Condon's and Brodner's entitlements to disability insurance benefits were continuing, and that Condon's eligibility for benefits should be reinstated as of August 1982 and Brodner's as of June 1983. The Secretary calculated that Condon was thereby entitled to be paid lump-sum past-due benefits in the amount of $12,341.70 and that Brodner was entitled to such benefits in the amount of $10,176. Pursuant to section 206(b)(1) of the Act, however, twenty-five percent of the lump-sum payments ($4,114 for Condon and $2,544 for Brodner) was withheld by the Secretary for possible payment of attorney's fees.

The plaintiffs' attorney, Whitney Lewendon, then filed petitions with the Social Security Administration pursuant to section 206(a) of the Act, 42 U.S.C. § 406(a), seeking payment for his representation of the plaintiffs in the administrative proceedings. On February 18, 1987, the Secretary authorized payment of $1,954.33 to Lewendon out of the withheld benefits in the Brodner action, and on March 16, 1987, he authorized payment of $3,000 to Lewendon in the Condon action. In addition, after payment of the fees in the Condon action, the Secretary released the balance of the withheld funds in this action ($1,114) to Condon, who then deposited this amount in an escrow account with his attorney. Apparently, in the Brodner action the Secretary also released the balance of the withheld funds to the claimant.

Lewendon then filed motions in district court pursuant to section 206(b)(1) of the Act, 42 U.S.C. § 406(b)(1), requesting payment of $2,934 for the 27.5 hours he had spent representing Condon in court and $2,119.67 for the 21.75 hours spent representing Brodner in court. Section 206(b) permits a court to set a "reasonable" fee based on "the total of the past due benefits to which the claimant is entitled," not exceeding twenty-five percent of this total. In his motions, Lewendon explained that the fees he was requesting were based on all benefits payable to the plaintiffs from the date of cessation of benefits to the date of reinstatement, including the interim payments, and that the amounts requested did not exceed twenty-five percent of these totals.

The Secretary filed briefs opposing the plaintiffs' motions for attorney's fees. The Secretary contended that the interim benefits paid to plaintiffs were not past-due benefits within the meaning of section 206(b) of the Act, and accordingly that the court could only award Lewendon twenty-five percent of the lump-sum payments, or $1,114, for his representation of Condon and $589.67 for his representation of Brodner.

The district court referred both matters to Magistrate Thomas Smith, who concluded that interim payments should be considered to be past-due benefits for the purpose of awarding attorney's fees. Magistrate Smith thus awarded Lewendon attorney's fees, at the rate of $100 an hour, for a total award of $2,750 in the Condon action and $2,175 in the Brodner action. The district court adopted the magistrate's opinion on July 27, 1987. After the district court issued its decision, the funds held in the escrow account in the Condon action were released in payment of the fee authorized by the district court for Lewendon's representation of Condon in court. In addition, Brodner paid Lewendon the fee that the district court awarded in full.

■ The Secretary then brought this appeal.[1]

---

**1.** Because of this sequence of events, we raised the question of mootness *sua sponte* during oral

argument of this appeal because at that time Lewendon had recovered all of the funds from

## DISCUSSION

In order to determine the scope of section 206 of the Act and resolve the question presented in these actions, we first examine the relevant statutory language. *See, e.g., Southeastern Community College v. Davis,* 442 U.S. 397, 405, 99 S.Ct. 2361, 2366, 60 L.Ed.2d 980 (1979); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756, 95 S.Ct. 1917, 1935, 44 L.Ed.2d 539 (1975) (Powell, J., concurring). Under Title II of the Act, the Secretary is authorized to withhold up to twenty-five percent of the total of past-due benefits for payment of attorney's fees if a claimant's action is successful. Specifically, section 206(b)(1) of the Act provides that:

Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Secretary may, notwithstanding the provisions of section 405(i) of this title, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

Although section 206 does not define past-due benefits, 20 C.F.R. § 404.1703 (1987) prescribes that past-due benefits are "the total amount of benefits payable under title II of the Act to all beneficiaries that has accumulated because of a favorable administrative or judicial determination or deci-

sion, up to but not including the month the determination or decision is made."

As to the interim payments, Congress in passing the Social Security Disability Benefit Appeals Act, Pub.L. No. 97–455, § 2, 96 Stat. 2497, 2498 (1983) (codified as amended at 42 U.S.C. § 423(g)(1) (1982 & Supp. III 1985)), provided for the continued payment to social security disability claimants of benefits pending appeal of the determination that their entitlement to benefits had ended. Specifically, 42 U.S.C. § 423(g)(1) states that:

In any case where—

(A) an individual is a recipient of disability insurance benefits ...,

(B) the physical or mental impairment on the basis of which such benefits are payable is found to have ceased, not to have existed, or to no longer be disabling, and as a consequence such individual is determined *not to* be entitled to such benefits, and

(C) a timely request for a hearing under section 421(d) of this title, or for an administrative review prior to such hearing, is pending with respect to the determination that he is not so entitled,

such individual may elect ... to have the payment of such benefits ... continued for an additional period beginning with the first month beginning after January 12, 1983, for which (under such determination) such benefits are no longer otherwise payable, and ending with the earlier of (i) the month preceding the month in which a decision is made after such a hearing, (ii) the month preceding the month in which no such request for a hearing or an administrative review is pending, or (iii) June 1989.

In addition, 42 U.S.C. § 423(g)(2)(A) provides that if the Secretary affirms the prior

---

the plaintiffs to which he claimed to be entitled. After having reviewed the letter briefs submitted by the parties on the mootness question, however, we conclude that although the district court's judgment has been complied with, the action is not moot. In light of the Secretary's "interest in ensuring that a claimant receives the full benefits to which he or she is entitled," an interest that encompasses the propriety and amount of attorney's fees, *House v. Secretary of Health and Human Services,* 688 F.2d 7, 10 (2d

Cir.1982) (citing *Allen v. United States,* 606 F.2d 432 (4th Cir.1979)), we hold that the Secretary does have standing to appeal. Furthermore, given that if we were to reverse the district court, we could order plaintiffs' attorney to reimburse the plaintiffs for the amount of fees paid that exceeded the twenty-five percent limit imposed by section 206(b)(1) of the Act, we conclude that the issue raised in the appeal is not moot.

determination that the claimant is no longer entitled to disability benefits, then any interim benefits that were previously paid are to be considered overpayments that are subject to recoupment. The statute does not explicitly mention attorney's fees, however, or whether the interim benefits are to be considered past-due benefits within the meaning of section 206 of the Act.

The plaintiffs contend that the plain language of section 206 supports their position that interim payments should be considered to be past-due benefits. Specifically, they assert that section 206 clearly provides that an attorney's fee may be based on the amount of benefits to which an individual "is entitled" because of a final, favorable determination of the Secretary. They add that the question of their entitlement to the interim benefits was not resolved until the Secretary issued the notices stating that he had decided that the plaintiffs had remained disabled, and thus they were only "entitled" to the interim benefits at the time that the Secretary made this determination. They therefore contend that attorney's fees can be based on interim benefits.

Magistrate Smith agreed with plaintiffs' interpretation of the statutes and concluded that the language of the regulation defining past-due benefits was "straightforward." J.App. at 56. He reasoned that under the language of the regulation and statutes, an interim payment is analogous to a loan which the Secretary advances to a claimant whose entitlement to disability benefits had been previously terminated, and that the claimant's obligation to repay this "loan" is only extinguished when the Secretary makes a final and favorable determination reversing the earlier termination of the claimant's benefits. *Id.* at 57–58. He thus concluded that interim payments do constitute past-due benefits for the purpose of calculating attorney's fees.

We note that even though this analysis is persuasive, the language of section 206 does not itself explicitly state whether or not interim benefits are past-due benefits. This lack of precision is not surprising, however, given that when section 206 of the Act was enacted, there was no provision for interim benefits. Because the plain language of the statutes does not conclusively determine the question before us, our task in construing the statutory language is "to interpret the words of these statutes in light of the purposes Congress sought to serve." *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 608, 99 S.Ct. 1905, 1911, 60 L.Ed.2d 508 (1979).

In implementing section 206(b) of the Act, Congress was seeking to "encourage effective legal representation of claimants" by assuring attorneys that they would receive adequate pay for representing social security claimants while at the same time prohibiting attorneys from charging claimants "inordinately large fees." *See* Hearings on H.R. 6675 Before the Com. on Finance of the Senate, 89th Cong., 1st Sess. 512–13 (1965) (1965 Hearings). *See also Dawson v. Finch*, 425 F.2d 1192, 1195 (5th Cir.), *cert. denied*, 400 U.S. 830, 91 S.Ct. 60, 27 L.Ed.2d 60 (1970). If the Secretary's position were adopted, and Lewendon's fees were limited to twenty-five percent of the benefits actually withheld by the Secretary, then his award in the Condon case would be at the hourly rate of $40.51 and in the Brodner case it would be at the hourly rate of $27.08, although Magistrate Smith explicitly found that a reasonable rate of compensation for Lewendon's work in these cases was $100 an hour. Moreover, Lewendon's actual rate of compensation in all social security actions, both successful and unsuccessful, would be considerably less than these already very low hourly rates because he is only entitled to a fee under section 206(b) if he is successful. Therefore, if the Secretary's suggested reading of the statutes were adopted, the Act's purpose of encouraging attorneys to represent social security claimants would be undermined. In addition, even assuming that the interim payments are paid over an extended period of time, the twenty-five percent of the payments that attorneys could receive under the plaintiffs' interpretation of the statute still would not constitute the type of "inordinately large" attorney's fee that Congress intended to prohib-

it under section 206 of the Act. *See* 1965 Hearings at 513 (noting that "inordinately large" attorney's fees usually result from contingent fee arrangements, under which attorneys frequently receive one-third to one-half of accrued benefits). Accordingly, we conclude that it is plaintiffs' interpretation of section 206 of the Act, not the Secretary's, that best furthers congressional intent.

As to the statutory provisions for interim benefits, the legislative history is silent as to whether interim benefits are to be included in the amount of money available for attorney's fees. In enacting section 423(g), however, Congress did express concern with alleviating hardship imposed on claimants by a long appeal process:

> The committee believes, based on the experience under the present temporary provision, that providing for continuation of payments during appeal helps considerably to ease the severe financial and emotional hardships that would otherwise be suffered by disabled persons.
>
> In addition, it is recognized that beneficiaries may be reluctant to elect to receive continued benefit payments for fear of not being able to repay the benefits provided if the decision of the Administrative Law Judge is unfavorable. The committee intends that at the time beneficiaries are given the opportunity to make this election they be informed that, in the event of an unfavorable determination, they might be eligible for a waiver or for a long-term repayment plan. The committee further intends that the Secretary take into account individual circumstances in making a determination as to whether or not to waive the overpayment.

H.Rep. No. 618, 98th Cong., 2nd Sess. 18 (1984), *reprinted in* 1984 U.S.Code Cong. & Ad.News 3038, 3055. *See also* 130 Cong.

Rec. S11,460–61 (daily ed. Sept. 19, 1984) (remarks of Sen. Cohen).

The Secretary maintains that his position is consistent with this congressional intent, because under his reading of the statute the claimant keeps all of the interim benefits, rather than only seventy-five percent of the benefits. We conclude, however, that claimants would actually suffer much greater hardship if they were not able to secure competent counsel to represent them in their appeals because of the extremely low fees to which their attorneys would be consigned under the Secretary's position, rather than if they received seventy-five percent of the benefits during the appeal process instead of one hundred percent.[2]

We also note that if the Secretary's position were adopted, then an unjustifiable dichotomy would be created between an attorney whose client opted for interim benefits and an attorney who represented a client who did not; the latter would receive considerably greater fees than the former, even though the extent of the legal services involved in both cases would be the same. This could result in placing a claimant's attorney

> in the conflicting position of advising clients not to apply for interim benefits, contrary to the provision of relief intended by Congress, or of not accepting such clients for representation. It would place the claimant in the position of foregoing interim benefits in order to obtain representation to secure the benefits not being paid, or of receiving the interim benefits with a higher risk of ultimately losing them and having to repay them, due to lack of adequate representation.

*Santos Rivera v. Secretary of Health and Human Services*, 674 F.Supp. 963, 965 (D.P.R.1987) (quoting Magistrate's Report and Recommendation). There is no evidence, however, that Congress intended to

---

**2.** In this regard, we do not find persuasive the Secretary's reliance on an "early alert" study conducted by the Inspector General of the Department of Health and Human Services that purportedly demonstrates that social security claimants do not have difficulties in obtaining counsel. *See* Addendum to Secretary's brief in *Condon v. Bowen.* Given that at the time the study was conducted, attorneys may well have assumed that they could receive fees based on interim benefits, as Lewendon did in the instant actions, this study does not support the Secretary's assertion that "compensation derived solely from past-due benefits has been adequate to attract competent counsel." *See* Secretary's brief at 39 in *Condon v. Bowen.*

treat those claimants who elected to receive interim payments differently from those who chose to let the benefits accumulate, or to treat the attorneys of such claimants differently.

■ Therefore, taking into account "the 'common sense' of the statute[s and] regulation, [their] purpose, [and] the practical consequences of the suggested interpretations," *New York State Commission on Cable Television v. Federal Communications Commission*, 571 F.2d 95, 98 (2d Cir.), *cert. denied*, 439 U.S. 820, 99 S.Ct. 85, 58 L.Ed.2d 112 (1978), we conclude that interim benefits should be included in the calculation of attorney's fees under section 206 of the Act. In reaching this conclusion, we note that district courts that have considered the precise question before us on this appeal have interpreted the statutory language in the same manner. *See Santos Rivera*, 674 F.Supp. at 964–65; *Shoemaker v. Bowen*, Civ.Act. No. CV84–PT–0486–S (N.D.Ala.1987) [available on WESTLAW, 1987 WL 49081]; *Rodriguez Marrero v. Secretary of Health and Human Services*, Civ. No. 84–1508 (D.P.R.1986).

Although the Secretary correctly points out that his interpretation of the statutes is entitled to some deference, " 'this deference is constrained by our obligation to honor the clear meaning of a statute, as revealed by its language, purpose, and history.' " *Southeastern Community College*, 442 U.S. at 411, 99 S.Ct. at 2369 (quoting *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 800 n. 20, 58 L.Ed.2d 808 (1979)). It is for the courts, not the administrative agency, to decide conclusively questions of statutory construction. *See, e.g., International Brotherhood of Teamsters v. Daniel*, 439 U.S. at 565–66 & n. 20, 99 S.Ct. at 799–800 & n. 20; *Securities and Exchange Commission v. Sloan*, 436 U.S. 103, 118–19, 98 S.Ct. 1702, 1711–12, 56 L.Ed.2d 148 (1978); *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803); *Ithaca College v. NLRB*, 623 F.2d 224, 228 (2d Cir.), *cert. denied*, 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980). In these cases, the Secretary has not established that his position is supported by the plain language of the statutes, the purpose of the Act or the Reform Act, or the legislative history of the statutes.

Moreover, we note that the Secretary has not published or adopted any regulations that explicitly address the issue of whether attorney's fees can be based on interim payments. Although 20 C.F.R. § 404.1703 defines past-due benefits as "the total amount of benefits payable under title II of the Act to all beneficiaries that has accumulated because of a favorable administrative or judicial determination or decision," this definition was issued before the introduction of interim benefits. *See* 45 Fed. Reg. 52,090 (1980). Therefore, when the Secretary promulgated section 404.1703, he could not have specifically intended to exclude interim benefits from the definition of past-due benefits.

Moreover, the cases that the Secretary cites in support of his interpretation of "past-due" benefits, *e.g., Motley v. Heckler*, 800 F.2d 1253 (4th Cir.1986); *Wheeler v. Heckler*, 787 F.2d 101 (3d Cir.1986); *Burnett v. Heckler*, 756 F.2d 621 (8th Cir. 1985), are distinguishable. These cases address the question of whether a district court has the authority to order the Secretary to withhold a portion of past-due supplemental security income benefits under Title XVI of the Act. As the Supreme Court concluded in *Bowen v. Galbreath*, — U.S. —, — – —, 108 S.Ct. 892, 893–94, 99 L.Ed.2d 68 (1988), however, when it held that district courts do not have such authority, Title II programs are distinct from Title XVI programs. In fact, the Supreme Court explicitly noted that the district court clearly would have had the authority to order the Secretary to withhold benefits if the case involved a Title II action. *Id.* at —, 108 S.Ct. at 894. We thus do not believe that the decisions cited by the Secretary are persuasive authority in support of his position in the instant actions, which involve interim benefits issued pursuant to Title II of the Act.

Finally, we acknowledge in passing the Secretary's argument that an affirmance of the district court's opinion would cause his agency "significant practical difficulties." By our ruling today, we do not intend to transform the Social Security Administration into "a collection agency for the Social

Security bar." We do not believe that such a result is a necessary conclusion to be drawn from our decision, however. Rather, we note that claimants can enter into their own private arrangements with their attorneys, for example by setting up escrow accounts for possible payments of attorney's fees, as Condon did in this action. Accordingly, it should not be necessary for the Social Security Administration to become involved in the collection of attorney's fees in all cases.

Affirmed.