**Buford GOWEN, Appellant,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Appellee.**

**Louie V. PITTMAN, Appellant,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services.**

Nos. 87–1994, 87–1995.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1988.

Decided Aug. 31, 1988.

Anthony W. Bartels, Jonesboro, Ark., for appellants.

Karen J. Sharp, Dallas, Tex., for appellee.

Before LAY, Chief Judge, BRIGHT, Senior Circuit Judge, and HANSON,[*] Senior District Judge.

LAY, Chief Judge.

Buford Gowen and Louie V. Pittman appeal the district court's[1] orders denying their petitions for attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A) (Supp. IV 1986), and under the Social Security Act, 42 U.S.C. § 406 (1982). For the reasons discussed below, we affirm in part, reverse in part, and remand.

## I. Background

### A. Buford Gowen

Gowen was awarded disability insurance benefits commencing on March 8, 1976, due to rheumatoid arthritis and degenerative joint disease of the cervical spine. Gowen drew benefits until March of 1983 when the Secretary of Health and Human Services (Secretary) advised Gowen that evidence in his file indicated that his disability had ended and that his benefits would accordingly cease. After exhausting his administrative remedies, Gowen appealed the Secretary's decision to the district court.

### B. Louie V. Pittman

Pittman was awarded disability insurance benefits commencing on March 31, 1972, due to arteriosclerotic heart disease with angina pectoris, hypertensive cardiovascular disease and obesity. Pittman drew benefits until June of 1983 when the Secretary notified Pittman that he no longer had an impairment that restricted his ability to work and that his benefits would accordingly cease. After this decision was affirmed at all levels of administrative review, Pittman appealed to the district court.

While Gowen's and Pittman's cases were pending in the district court, Congress passed the Social Security Disability Benefits Reform Act of 1984 (Reform Act of 1984), Pub.L. No. 98-460, 98 Stat. 1794 (codified as amended at 42 U.S.C. § 423 (1982 & Supp. III 1985)). The Reform Act of 1984 required that disability-termination cases pending as of September 19, 1984, be remanded to the Secretary for reevaluation under the newly codified medical improvement standard. Both Pittman's and Gowen's cases were remanded and interim benefits were resumed. Following administrative proceedings on remand in which the medical improvement standard was applied, the Secretary found continuing entitlement to disability benefits in both cases and reinstated Gowen's and Pittman's benefits.

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Honorable G. Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas. Because Gowen's and Pittman's separate appeals present the same issues, and Anthony W. Bartels, Esq., represents the appellants in both actions, their appeals have been consolidated for purposes of review.

The district court then dismissed both actions.

The claimants thereafter filed motions for attorney's fees under the EAJA and under the Social Security Act seeking the amount of one-fourth of their past-due benefits plus one-fourth of the interim benefits they received while their cases were pending the administrative decision on remand. Gowen and Pittman also sought fees for attorney's services rendered at the administrative level.

In each case, the district court awarded attorney's fees and costs pursuant to the Social Security Act in an amount not to exceed twenty-five percent of Gowen's and Pittman's past due benefits but denied fees from the interim benefits paid to Gowen and Pittman. The district court also denied attorney's fees under the EAJA finding that the Secretary's position was substantially justified. Finally, the district court held that it had no authority to award attorney's fees for representation before the Secretary at the administrative level. These appeals followed.

## II. Discussion

### A. Fees Under the EAJA

A prevailing party is entitled to an award of attorney's fees under the EAJA unless the Secretary can establish that its position was substantially justified, or unless special circumstances exist which make an award of attorney's fees unjust. 28 U.S.C. § 2412(d)(1)(A); see also Jackson v. Bowen, 807 F.2d 127, 128 (8th Cir.1986) (per curiam); United States v. 1,378.65 Acres of Land, 794 F.2d 1313, 1317–18 (8th Cir. 1986). The Secretary bears the burden of proving that its position was substantially justified at both the administrative and litigation levels. 28 U.S.C. § 2412(d)(2)(D) (Supp. IV 1986); Jackson, 807 F.2d at 128; Herron v. Bowen, 788 F.2d 1127, 1130 (5th Cir.1986); Keasler v. United States, 766 F.2d 1227, 1231 (8th Cir.1985).

For the Secretary's position to be substantially justified, the Secretary "must show not merely that its position was marginally reasonable; its position must be clearly reasonable, well founded in law and fact, solid though not necessarily correct." 1,378.65 Acres of Land, 794 F.2d at 1318 (footnote omitted). As indicated, the district court concluded that the Secretary's position in Gowen's case and Pittman's case was substantially justified and therefore denied attorney's fees under the EAJA. We affirm the decision of the district court in Pittman's case. We reverse, however, with the district court's decision in Gowen's case.[2] We also grant fees out of interim benefits.

### 1. Buford Gowen

■ Gowen was initially awarded disability insurance benefits on March 8, 1976, due to rheumatoid arthritis and degenerative joint disease of the cervical spine. The record demonstrates that Gowen was treated at the Veterans Administration Hospital from 1975 to 1983 for his arthritis and also for a respiratory condition. Following a periodic review, Gowen was advised by the Secretary that his disability had ended in March of 1983 and his benefits were ceased. In determining that Gowen no longer was disabled, the Secretary considered the medical reports from Gowen's treatment at the Veterans Administration Hospital and a consultative report from Dr. O.H. Clopton who had performed a consultative examination of Gowen on February 23, 1983. In his report, dated February 25, 1983, Dr. Clopton stated that Gowen was suffering from rheumatoid arthritis, osteoarthritis, chronic obstructive lung disease with some moderate restrictive component and possible asbestosis.

At the administrative hearing held on July 19, 1983, Gowen testified that he was compelled to quit working in 1975 due to his arthritis. Gowen testified that he suffered from dizziness, headaches, arthritic pain and breathing difficulties. He also stated that he was unable to grip objects because his hands were swollen. Gowen also testified that he went to the Veterans

---

**2.** Under the EAJA as amended the "position" of the United States includes both the underlying administrative position and litigation position. 28 U.S.C. § 2412(d)(2)(D).

Administration Hospital every two or three months for outpatient treatment and that he took Naproxen and Acetaminophen for pain. Gowen also testified that his daily activities were restricted to making coffee, occasionally washing dishes, taking walks, watching television, and helping his children with their homework. Finally, Gowen stated that he does not sleep well.

The Administrative Law Judge (ALJ) determined that substantial evidence did not exist in the record to support a finding that Gowen continued to be disabled as defined in the Social Security Act because he had residual functional capacity to perform his past relevant work as a laundry delivery person. 20 C.F.R. § 404.1520(e) (1987); *see also Metcalf v. Heckler*, 800 F.2d 793, 797 (8th Cir.1986); *Watson v. Califano*, 618 F.2d 18, 19 (8th Cir.1980). In doing so, the ALJ stated that Gowen's limitation of motion, arthritic changes, restrictive impairment, and arthritis, "while obviously vexing to him," were, in essence, rather moderate in severity.

Following the ALJ's decision, Gowen saw Dr. John D. Ashley at his attorney's behest. In his report, dated October 1, 1983, Dr. Ashley diagnosed Gowen as suffering from generalized rheumatoid arthritis with possible secondary hypertrophic arthritis, spondylosis with degenerative joint disease involving four intervertebral spaces, osteo and rheumatoid arthritis of the lumbar spine, and asbestosis with diminished vital capacity secondary to asbestos exposure. Although Dr. Ashley stated that Gowen's asbestosis would not by itself preclude Gowen from engaging in gainful activity, he did express the opinion that Gowen was totally and permanently disabled by rheumatoid arthritis. The Appeals Council reviewed Dr. Ashley's report but concluded that there was no basis for granting Gowen's request for review of the ALJ's decision. Gowen then submitted progress notes from the Veterans Administration indicating that Gowen visited the Veterans Administration Hospital on a continuing basis for treatment of his restrictive impairment and arthritis. Again, the Appeals Council refused to review the ALJ's decision.

Although the Secretary determined that Gowen had the residual functional capacity to perform his past relevant work, the record demonstrates that the Secretary had no justification whatsoever in terminating Gowen's benefits after eight years of entitlement. The only evidence which remotely supports the Secretary's decision is the February 25, 1983, report of Dr. Clopton, a government-paid physician who examined Gowen on only one occasion. Although Dr. Clopton opines that Gowen's arthritis and limitation of motion were moderate in severity, Dr. Clopton does not, in any way, express the opinion that Gowen no longer was totally and permanently disabled. Conversely, as indicated, Dr. Clopton states that Gowen continued to suffer from rheumatoid arthritis, osteoarthritis, chronic obstructive lung disease and possible asbestosis.

We find the Secretary has disregarded the overwhelming evidence in the record including Gowen's testimony, the report of Dr. Ashley and the progress notes from the Veterans Administration demonstrating Gowen's continuing disability. 42 U.S.C. § 423(d)(2)(C); *see also Gamber v. Bowen*, 823 F.2d 242, 245 (8th Cir.1987); *Cornella v. Schweiker*, 728 F.2d 978, 984 (8th Cir. 1984) (government's position unreasonable in fact when relied on isolated part of evidence and ignored other overwhelming evidence of disability); *Weakley v. Bowen*, 803 F.2d 575, 578–79 (10th Cir.1986) (Secretary's reliance on only one physician's testimony not substantially justified when the testimony conflicted with other medical opinions, testimony at hearing, and history of patient's illness); *Allen v. Weinberger*, 552 F.2d 781, 786 (7th Cir.1977).

Because the record demonstrates that Gowen's disability never ceased and that the Secretary impermissibly relied solely upon Dr. Clopton's consultative examination report in reaching the conclusion that after eight years, Gowen no longer was disabled, we conclude that the Secretary terminated Gowen's benefits improperly. We therefore find the district court abused its discretion in holding that the Secretary's position was substantially justified in

Gowen's case. In doing so, we hold that Gowen is entitled to attorney's fees under the Equal Access to Justice Act.[3] We thus vacate the judgment of the district court and remand for entry of attorney's fee under the EAJA.

### 2. Louie V. Pittman

■ Pittman was initially awarded disability insurance benefits on March 31, 1972, due to arteriosclerotic heart disease with angina pectoris, hypertensive cardiovascular disease and obesity. In May of 1983, Dr. S.M. Blanchard performed a general consultative examination of Pittman at the request of the Social Security Administration. Following the examination, Dr. Blanchard diagnosed Pittman as suffering from organic heart disease by history, angina pectoris and exogenous obesity. Following a consultative cardiologist examination on September 15, 1983, Dr. James S. Haimsohn noted in his report that without coronary arteriograms, the only thing he could state for sure was that Pittman had hypertensive cardiovascular disease. Dr. Haimsohn strongly suspected that Pittman did not have significant coronary insufficiency. Based upon his examination, Dr. Haimsohn noted that he did not find any definite reason for restricting Pittman's activity. On September 19, 1983, Pittman underwent an orthopedic evaluation by Dr. James G. McClure. Although Dr. McClure diagnosed exogenous obesity, hypertension, recurrent low back strains, history of angina pectoris and inadequate constitution, he advised that Pittman was capable of a reasonable amount of standing, walking, stooping, bending and light lifting.

At the administrative hearing held on October 18, 1983, Pittman testified that he continued to suffer chest pain on exertion as well as pain in his back, legs and head. Pittman also testified that his daily activities were restricted to helping with the dishes, sweeping, occasionally going to the store and sitting in the yard. Following the hearing, the ALJ determined that substantial evidence did not exist in the record to support a finding that Pittman continued to be disabled as defined in the Social Security Act because he had the residual functional capacity to perform the physical exertion requirements of a wide range of light work except for heavy lifting or carrying or very strenuous exertion. 20 C.F.R. §§ 404.1545, 1567 (1987).

Following the ALJ's decision, Pittman submitted additional evidence from Dr. Ken Carpenter, who saw Pittman on September 7, 1983. Dr. Carpenter noted that Pittman's anginal symptoms were increasing and increased Pittman's Nitro–Bid. Dr. Carpenter also noted that Pittman was overweight. Dr. Carpenter's report was submitted to the Appeals Council. The Appeals Council stated that it considered the report of Dr. Carpenter but concluded that there was no basis for granting Pittman's request for review of the ALJ's decision. In March of 1984, Pittman was examined by Dr. John Ashley at his attorney's behest. Dr. Ashley diagnosed residuals of myocardial infarctions in 1970 and 1975 with angina on exertion, limited exercise tolerance, dyspnea, disc disease and history

---

3. The instant case is distinguishable from *Truax v. Bowen*, 842 F.2d 995 (8th Cir.1988). In *Truax*, a panel of this court determined that although the Secretary's position was without substantial justification because it was inconsistent with this court's decision in *Rush v. Secretary of Health & Human Servs.*, 738 F.2d 909 (8th Cir.1984), which settled the question of the proper standard for review and termination of benefits, the disability claimant was not a prevailing party for purposes of attorney's fees under the EAJA because the claimant's action appealing the termination of his disability benefits was not the "catalyst" that brought about the enactment of the Reform Act of 1984.

Although the Secretary improperly continued to contest Gowen's right to benefits for five months after *Rush* became the law of this circuit, we also conclude that Gowen's disability never ceased. Gowen's federal suit in the instant case was essential for him to receive the ultimate benefits to which he was entitled. Based upon the record presented, we conclude that if the district court had reached the merits of Gowen's action, which it did not because of the fortuitous enactment of the Reform Act of 1984, it would have found, as have we, that the Secretary was without substantial justification in terminating Gowen's benefits after eight years of entitlement irrespective of the enactment of the Reform Act of 1984. In doing so, we conclude that Gowen is a prevailing party for purposes of the EAJA.

of peptic ulcer under treatment. Dr. Ashley expressed the opinion that Pittman was totally disabled. Following the submission of Dr. Ashley's report, the Appeals Council again concluded that there was no basis for changing the ALJ's decision.

Pittman maintains that the district court abused its discretion in finding that the Secretary's decision that his disability had ceased in June of 1983 was substantially justified because the Secretary improperly fragmented the evidence, isolating that evidence that was favorable while ignoring the other evidence which demonstrated that his disability had never ceased. We cannot agree. Rather, we conclude that the Secretary's position was arguably justified in light of the considerable inconsistent medical evidence presented, including the reports of Drs. Haimsohn and McClure, both of whom expressed the opinion that Pittman possessed the ability to engage in light work as defined by the Social Security Regulations. *Jackson,* 807 F.2d at 129. Moreover, this is not a case in which the Secretary rejected undisputed evidence which showed a per se entitlement to benefits. *See Herron,* 788 F.2d at 1132 (Secretary's position therefore without substantial justification). As indicated, the evidence in Pittman's case was both equivocal and highly disputed. Because at least one permissible view of the evidence leads to the conclusion that the Secretary has shown a reasonable basis in fact and law for its position that Pittman's disability had ceased, *1,378.65 Acres of Land,* 794 F.2d at 1318, we find that the district court did not abuse its discretion in not awarding attorney's fees under the EAJA in Pittman's case.

### B. Fees for Services at the Administrative Level

■ Gowen and Pittman also maintain that the district court should have awarded attorney's fees under the Social Security Act for services at both the judicial and administrative levels. We cannot agree. We have previously held that the matter of fees for legal services before the Secretary is committed by 42 U.S.C. § 406(b)(1) to the responsibility of the Secretary exclusively,

and compensation for work before an agency may only be authorized by the agency. *Fenix v. Finch,* 436 F.2d 831, 838 (8th Cir.1971). Other circuits have agreed with this position. *See, e.g., Harris v. Secretary of Health & Human Servs.,* 836 F.2d 496, 497 (10th Cir.1987); *Guido v. Schweiker,* 775 F.2d 107, 108 (3d Cir.1985). Therefore, the district court did not abuse its discretion in determining that it was without the authority to award fees for representation at the administrative level.

### C. Fees from the Interim Benefits

■ Finally, Gowen and Pittman contend that the district court erred in denying attorney's fees in the amount of one-fourth of the interim benefits they received while their cases were pending administrative decision on remand. We agree.

Title II of the Social Security Act provides for the payment of attorney's fees by withholding a portion of the successful claimant's past due benefits:

Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and allow as part of its judgment a reasonable fee for such representation, not in excess of 25 percent of the total of the past-due benefits to which the claimant is entitled by reason of such judgment, and the Secretary may, notwithstanding the provisions of section 405(i) of this title, certify the amount of such fee for payment to such attorney out of, and not in addition to, the amount of such past-due benefits. In case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph.

42 U.S.C. § 406(b)(1). Although the statute fails to define past due benefits, the Secretary has defined the term as follows:

the total amount of benefits payable under title II of the Act to all beneficiaries that has accumulated because of a favorable administrative or judicial determination or decision, up to but not including

the month the determination or decision is made.

20 C.F.R. § 404.1703 (1987). This definition leaves open the question of whether interim benefits should be included as part of past due benefits for the purpose of calculating attorney's fees.

The Secretary contends that interim benefits cannot be considered past due benefits "because they were paid to the claimant while his claim was pending reconsideration and are therefore no longer 'benefits payable under Title II of the Act.'" Appellee's brief at 19. The Secretary apparently views interim benefits as grants made by the agency "to help alleviate some of the difficulties faced by persons terminated from the Social Security rolls." *Id.* at 19–20.

We believe the Secretary's interpretation is incorrect. Interim benefits were created through the Reform Act of 1984 and intended to provide "continued payment to social security disability claimants of benefits pending appeal of the determination that their entitlement to benefits had ended." *Condon v. Bowen*, 853 F.2d 66, at 69 (2d Cir.1988). In essence, interim benefits are "loans" made by the Secretary to claimants whose entitlement to disability has been terminated. The claimant may accept or refuse the loan. 42 U.S.C. § 423(g)(1). If the claimant accepts the interim payments but does not eventually succeed in the reinstatement of the entitlement to disability benefits, the interim benefits are viewed as overpayment and are subject to recoupment. *Id.* at § 423(g)(2)(A). However, if the claimant is successful on appeal, the obligation to repay the interim benefits is extinguished at the time the Secretary makes a final determination reinstating claimant's entitlement to disability benefits. *Condon*, at 70. In this sense, interim benefits are the same as withheld or accrued benefits. We therefore conclude that both of these types of benefits must be viewed as past due benefits.

To rule otherwise would be contrary to "the spirit of § 406 which is intended to promote the adequate representation of potentially disabled individuals through a rea-sonable attorney's fee while at the same time preventing too great a reduction in a claimant's already inadequate stipend in the event he is declared disabled." *Santos Rivera v. Secretary of Health & Human Servs.*, 674 F.Supp. 963, 965 (D.P.R.1987) (*citing Dawson v. Finch*, 425 F.2d 1192, 1195 (5th Cir.), *cert. denied*, 400 U.S. 830, 91 S.Ct. 60, 27 L.Ed.2d 60 (1970)). Under the Secretary's view, the attorney for a claimant that chooses to receive interim benefits will stand to gain much less than the attorney for a claimant who refuses interim benefits even though both attorneys perform the same work. This would obviously create a disincentive for attorneys in representing claimants who accept interim benefits. Consequently, claimants would be compelled to forego the relief intended by Congress to retain competent legal representation. *Santos Rivera*, 674 F.Supp. at 965.

We can ascertain no reason why Congress would place those who elect the continued receipt of benefits in a less favorable position than those who do not. We therefore conclude that to eliminate interim benefits from the attorney's fee formula would both deprive potential claimants of their rights and defeat the purposes of both the Reform Act of 1984 and section 406.

Conclusion

We therefore vacate the judgment of the district court as to the entitlement of attorney's fees from interim benefits; we vacate the judgment denying attorney's fees under the EAJA to Gowen; we affirm the denial of attorney's fees under the EAJA to Pittman. We affirm the judgment of the district court in all other respects.