**Frances GUGLIETTI,
Plaintiff, Appellee,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant,
Appellant.**

**No. 89–1281.**

United States Court of Appeals,
First Circuit.

Heard Dec. 8, 1989.

Decided March 28, 1990.

Rehearing and Rehearing En Banc
Denied April 23, 1990.

Robert M. Peckrill, Asst. Regional Counsel, Dept. of Health and Human Services, with whom Lincoln C. Almond, U.S. Atty.,

**398**

and Everett G. Sammartino, Asst. U.S. Atty., Providence, R.I., were on brief, for defendant, appellant.

John W. Dineen with whom David B. Green, Providence, R.I., was on brief, for plaintiff, appellee.

Before BREYER, TORRUELLA and SELYA, Circuit Judges.

SELYA, Circuit Judge.

The Secretary of Health and Human Services (Secretary) asseverates that a fee award entered in the United States District Court for the District of Rhode Island pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), was improvident. We are persuaded that the Secretary is correct and therefore reverse.

**I**

Plaintiff-appellee Frances Guglietti received Social Security disability benefits from and after April 1978. The Secretary subsequently concluded that appellee was no longer disabled and, in October 1980, stopped paying her. Guglietti invoked her right of review under the Social Security Act. In succession, a departmental administrative law judge (ALJ), the Secretary's Appeals Council, and the United States District Court for the District of Rhode Island (Boyle, Chief Judge), acting under 42 U.S.C. § 405(g), upheld the Secretary's determination.[1] Plaintiff appealed to this court.

While Guglietti's appeal was pending, Congress enacted the Social Security Disability Benefits Reform Act of 1984 (Reform Act), Pub.L. 98–460, 98 Stat. 1794 (1984). Section 2(d)(2)(C) thereof required that all cases undergoing judicial review as at September 19, 1984, in which the Secretary had terminated benefits, be returned to the Secretary for reevaluation and reconsideration in accordance with new "medical improvement" standards set forth in the Reform Act. *Id.*, 98 Stat. at 1797. Gu-

glietti's case—unarguably a disability-termination case within the Reform Act's purview—was remanded.

Following a reevaluation of plaintiff's condition at the administrative level, the Secretary applied the neoteric standards, ruled that the requisite "medical improvement" was not evident, and reinstated benefits. Plaintiff thereupon returned to district court and filed a timely motion for counsel fees under EAJA. A different district judge heard and allowed the application. This appeal ensued.

**II**

The EAJA, with exceptions not here relevant, provides in material part that:

[A] court shall award to a prevailing party other than the United States fees and other expenses, ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A). To be entitled to an award of fees, a litigant must fulfill several conditions. First and foremost, she must be a "prevailing party" within the statute's contemplation. In that connection, EAJA's reference to prevailing party status must be read consistently with the phrase's usage in other federal fee-shifting statutes. *See McDonald v. Secretary of HHS*, 884 F.2d 1468, 1474 (1st Cir.1989); *Premachandra v. Mitts*, 727 F.2d 717, 720 (8th Cir.1984); *see also Texas State Teachers Ass'n v. Garland Independent School Dist.*, —— U.S. ——, 109 S.Ct. 1486, 1489, 103 L.Ed.2d 866 (1989); *Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983).

■ In focusing the lens of inquiry, we look to isolate some "material alteration of

---

1. Initially, Judge Boyle referred the matter to a magistrate who suggested that the Secretary's decision be set aside. The court thereafter considered the question de novo, *see* 28 U.S.C. § 636(b)(1)(B); Fed.R.Civ.P. 72(b), rejected the magistrate's recommendation, and ruled in the Secretary's favor.

the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas Teachers*, 109 S.Ct. at 1493. Moreover, in order to constitute a litigant as "prevailing," the legal relationship must be altered in one of two ways: the party either must have enjoyed some bottom-line litigatory success or her suit must have had a catalytic effect in bringing about a desired result. Bearing those principles in mind, we first inspect how the prevailment question was handled below. We then explore the two paths which have traditionally led to prevailing party status, relating them to the case at bar. Finally, we discuss a line of authority suggesting that a somewhat different avenue may be open to plaintiff.

### A. *Proceedings Below.*

In this instance, the district court ruled that plaintiff satisfied the prevailing party prong of the EAJA test. Ordinarily, we would view that determination through a deferential glass. *See McDonald*, 884 F.2d at 1474; *see also Pierce v. Underwood*, 487 U.S. 552, 108 S.Ct. 2541, 2546–49, 101 L.Ed.2d 490 (1988) (abuse of discretion standard used in reviewing district court's determination of whether government's position "substantially justified" for EAJA purposes). Be that as it may, a peculiar concatenation of circumstances requires that we withhold deference here.

When first filed, the EAJA application in question was referred to the magistrate. He treated the matter of plaintiff's status summarily, stating only: "It does appear as though plaintiff prevailed since her benefits were reinstated upon reexamination of her position." The magistrate cited no cases and offered no further explication. The Secretary objected to the magistrate's report on several grounds, the first of which asserted that plaintiff was "not a 'prevailing party' within the meaning of EAJA." The Secretary's supporting mem-

orandum amplified that thesis at some length.

■ Notwithstanding, the district court took the issue as conceded.[2] The court was wrong: the Secretary had objected on that precise basis and developed the argumentation necessary to support the assigned error. When the trial court, in making a judgment call, obviously misapprehends the record, an appellate tribunal ought not to defer to the trial court's determination. *See, e.g., Spiegel v. Trustees of Tufts College*, 843 F.2d 38, 43–44 (1st Cir.1988) ("substantial deference" normally accorded to district court's view is nullified when court fails to make specific findings) (discussing Fed.R.Civ.P. 54(b)); *see also Quaker State Oil Refining Corp. v. Garrity Oil Co.*, 884 F.2d 1510, 1517 n. 5 (1st Cir.1989) (where magistrate's reasoning unexplained and ensuing order "cryptic," reviewing court need not grant full 28 U.S.C. § 636(b)(1)(A) deference, but may "discount" the magistrate's conclusion). That principle is plainly apposite in this case.

■ Having exposed the error and sidetracked the occasion for deference, we could, of course, remand for further consideration below. But, neither side has urged us to follow that course; in this instance, the subsidiary "prevailment" facts are not legitimately in dispute, making the prevailing party question largely one of law; and the district judge, who had not heard the underlying disability-termination case, enjoys no special familiarity with the matter's provenance. Under these rather uncommon circumstances, we believe the issue is better decided here and now. *Cf., e.g., M.O.N.T. Boat Rental Service, Inc. v. Union Oil Co.*, 613 F.2d 576, 581 (5th Cir. 1980) (no need to remand where good understanding of claim obtainable without further factfinding); *Silva v. Romney*, 473 F.2d 287, 289 n. 2 (1st Cir.1973) (no need to remand for purpose of setting forth findings where parties not misled as to basic

---

**2.** In its bench decision, the district court's only direct reference to the point was the following statement: "In order to recover counsel fees, Plaintiff must demonstrate first that she prevailed and not even defendant disputes that."

Although the record does not contain a transcript of the arguments below, appellee has not claimed that the Secretary waived the prevailment defense before the district court.

issue); *Yanish v. Barber,* 232 F.2d 939, 947 (9th Cir.1956) (no need to remand where record as a whole presents no genuine issue of material fact); *Urbain v. Knapp Bros. Mfg. Co.,* 217 F.2d 810, 816–17 (6th Cir.1954) (similar), *cert. denied,* 349 U.S. 930, 75 S.Ct. 772, 99 L.Ed. 1260 (1955). We write, therefore, upon a pristine page.

## B. *Litigatory Success.*

■ In the more typical case, prevailing party status is conferred because a party has succeeded on a "significant issue in litigation which achieves some of the benefit ... sought in bringing suit." *Nadeau v. Helgemoe,* 581 F.2d 275, 278–79 (1st Cir. 1978).[3] *See also Texas Teachers,* 109 S.Ct. at 1491; *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939; *Stefan v. Laurenitis,* 889 F.2d 363, 369 (1st Cir.1989); *Coalition for Basic Needs v. King,* 691 F.2d 597, 599 (1st Cir. 1982). This test, sometimes called the "merits" test, *Exeter–West Greenwich Regional School Dist. v. Pontarelli,* 788 F.2d 47, 50 (1st Cir.1986), "states the obvious, namely, that a party has prevailed if [she] wins the litigation." *Coalition for Basic Needs,* 691 F.2d at 599. We do not think that this lane is open to Guglietti: the mere obtaining of a remand directed by Congress is not reflective of success on any issue in plaintiff's suit. The law is settled that a remand, even if won rather than donated, "lacks both the degree of finality and the causal connection to merits relief necessary to engage the gears of the EAJA." *Vascera v. Heckler,* 624 F.Supp. 1198, 1202 (D.R.I.1986). *Accord Cook v. Heckler,* 751 F.2d 240, 241 (8th Cir.1984); *Brown v. Secretary of HHS,* 747 F.2d 878, 881–83 (3d Cir.1984); *McGill v. Secretary of HHS,* 712 F.2d 28, 31–32 (2d Cir.1983), *cert. denied,* 465 U.S. 1068, 104 S.Ct. 1420, 79 L.Ed.2d 745 (1984).

Moreover, the post-remand benefits which Guglietti ultimately received did not result from a by-the-numbers review of the issues raised in her complaint. Rather, reinstatement of benefits came about because of changes in the legal landscape and, perhaps, in the albedo of updated, newly received medical information about plaintiff's condition.[4] Certainly, the mere temporal coincidence between passage of the Reform Act and the pendency of Guglietti's appeal, standing alone, seems too frail a link between bottom-line success and litigation.

Plaintiff ruminates that, had she not brought her original complaint and thereafter appealed from the district court's affirmance of the Secretary's decision, she would not have been in a position to take advantage of the Reform Act. That is so, *see* Reform Act, § 2(d)(2)(C), 98 Stat. at 1797, but it confuses a *condition* of recovery with a *cause* of recovery. As two other courts of appeals have said in rejecting identical pleas, such a "but-for" argument distorts the EAJA framework. *See Hendricks v. Bowen,* 847 F.2d 1255, 1258 (7th Cir.1988); *Truax v. Bowen,* 842 F.2d 995, 997 (8th Cir.1988) (per curiam); *see also Sherman v. Bowen,* 647 F.Supp. 700, 702 (D.Me.1986) (Cyr, C.J.) (the but-for argument "proves too much"); *cf. Karelitz v. Damson Oil Corp.,* 820 F.2d 529, 531 (1st Cir.1987) (discussing but-for causality in tort cases). In this case as in *Hendricks,* a case on all fours, the Secretary reinstated plaintiff's benefits not because of plaintiff's litigatory accomplishment but "because Congress mandated reconsideration of all such currently pending claims under a newly enacted standard." 847 F.2d at 1258 (footnote omitted).

---

**3.** *Nadeau* was a class action suit brought under 42 U.S.C. § 1983. Hence, its tenor emphasizes the plaintiff's burden. In an EAJA case, a successful defendant can as easily become a prevailing party. *See* 28 U.S.C. § 2412(d)(1)(A) (authorizing award of fees in "any civil action ... brought *by or against* the United States") (emphasis supplied).

**4.** Our remand order was entered on April 3, 1985. The record is absolutely silent as to what

transpired from that time until the Secretary notified Guglietti that her "payments should have continued." That notice, which we have annexed as an appendix, was sent over two years later. It says that the Secretary's decision to continue paying was "based on information we have *now*" (emphasis supplied), perhaps implying that more recent medical reports were considered. But, there is no way we can tell on the record as presented by the parties.

Inasmuch as plaintiff did not win on the merits of any litigated issue, the most heavily travelled road to prevailing party status is closed to her.

### C. Catalyst Theory.

The second path to prevailing party status involves what has come to be known as the "catalyst" test. *See Exeter–West Greenwich*, 788 F.2d at 50. As Judge Coffin explained in a landmark case, "when plaintiff's lawsuit acts as a 'catalyst' in prompting defendants to take action to meet plaintiff's claims, attorney's fees are justified [under a fee-shifting law] despite the lack of judicial involvement in the result." *Nadeau*, 581 F.2d at 279. A fee-seeker's access to the catalyst anodyne demands that she vault two hurdles en route to prevailing party status, showing (1) a causal connection between the litigation and the relief obtained, and (2) that the fee-target did not act gratuitously. *Id.* at 280–81. Here, the first hurdle is too high (and so, we do not reach the second).

To be regarded as a catalyst, a suit need not be the sole cause of the fee-target's actions, but it must be a competent producing cause of those actions in at least some measurable, significant degree:

> [N]o award is required if the court determines that plaintiff's suit was completely superfluous in achieving the improvements undertaken by defendants on plaintiff's behalf. ... [T]he plaintiff's suit ... [must be] a necessary and important factor in achieving the improvements....

*Id.; see also Coalition for Basic Needs*, 691 F.2d at 599 (same). Put another way, the litigation's "provocative role" in the calculus of relief is a *sine qua non* to the fee-seeker's successful deployment of the theorem. *Nadeau*, 581 F.2d at 280; *Harrington v. DeVito*, 656 F.2d 264, 267 (7th

Cir.1981), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982).

In *Truax*, a case squarely in point, the Eighth Circuit found the requisite causal connection lacking:

> [E]ven granting that Congress' enactment of the Reform Act was partly a result of the thousands of suits filed by terminated claimants against the Secretary, we believe that the causal link between Truax's individual lawsuit and Congress's action is too tenuous to satisfy the catalyst test.

*Id.* at 997 (citation omitted); *see also Goodro v. Bowen*, 854 F.2d 313, 314–15 (8th Cir.1988); *but cf. Gowen v. Bowen*, 855 F.2d 613, 617 n. 3 (8th Cir.1988) (distinguishing *Truax*).[5] The Seventh Circuit has held the same:

> The nexus between Congress' action and [the social security claimant's] suit is too attenuated to conclude that the latter played a "provocative role" in causing the former. The Secretary did not reinstate [claimant's] benefits because the Secretary wanted to compromise a dispute or because he became convinced that his prior position was unprincipled. Rather, the Secretary reinstated [claimant's] benefits because Congress mandated reconsideration of all such currently pending claims under a newly enacted standard. Admittedly, as the court noted in *Truax*, [such] claimants ... would not have been entitled to disability benefits if they had not pursued fully their legal remedies. But only in a hypertechnical sense does this make [claimant's] lawsuit the "cause" of his victory. The proximate cause of his victory was the congressional enactment of a standard under which he was entitled to relief. We simply do not believe that Congress envisioned the "prevailing party" lan-

---

**5.** In *McDonald*, a class action suit challenging the Secretary's severity test, plaintiffs had won a court-ordered remand. The Secretary subsequently changed the applicable administrative standard. We affirmed a finding that plaintiffs were prevailing parties, distinguishing *Truax* because, in *McDonald*, "the remand resulted not from a change in the law [as in *Truax*], but from the courts' concern that HHS had applied

the severity test improperly." 884 F.2d at 1475. *McDonald*, although not in point, suggests that *Truax*, on its own merits—merits identical to those presented in the instant case—was correctly decided. We also note that *Rhoten v. Bowen*, 854 F.2d 667 (4th Cir.1988), relied on by appellee, seems to us to be cast in the *McDonald* mold. *See id.* at 668–69 (describing court-ordered remand prior to Reform Act's passage).

guage in the EAJA to be so broad as to encompass the instant circumstance. *Hendricks*, 847 F.2d at 1258. *See also id.* at 1259 (Easterbrook, J., concurring) ("[C]laimant's suit did not cause Congress to enact the Reform Act. One or a hundred or even a thousand suits, more or less, would not have affected that legislation. So [claimant] does not recover on the theory that this suit was the 'catalyst' for legal change.").

It is on this ground that our dissenting brother, with a stirring analogy to soldiers storming an enemy's hill, takes his stand. *Post* at p. 406. And a few other cases have marched to the same drummer. *See, e.g., Robinson v. Bowen*, 679 F.Supp. 1011, 1014–15 (D.Kan.1988), *aff'd per curiam*, 867 F.2d 600 (10th Cir.1989); *Whiting v. Bowen*, 671 F.Supp. 1219, 1224 (W.D.Wis. 1987). With respect, however, we believe that these courts, in an earnest but result-oriented response, have stretched too far. We find authorities such as *Hendricks* and *Truax* to be more persuasive, especially because there is nothing to indicate that (1) the newly legislated standard was a more difficult one for claimants to surpass; or (2) the medical information to be examined by the Secretary after remand was restricted to that originally produced before the ALJ; or (3) the Reform Act, or its legislative history, *see Hendricks*, 847 F.2d at 1258–59; *see also Goodro*, 854 F.2d at 315 (Benson, J., concurring), foreshadowed an expectation that beneficiaries of the legislation would receive counsel fees as well. In fine, it seems naive in a run-of-the-mine case like this one to credit the change in the law to the recipient's appeal. And in the absence of such credit, the first condition precedent to animating the catalyst theory cannot be met.

We make one additional point. The EAJA environment is simply not the place to attempt to broaden prevailing party jurisprudence. The test of prevailing party status is itself "a generous formulation." *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939.

EAJA, which "constitutes a waiver of sovereign immunity [such that] its words must be narrowly construed and its borders rigorously observed," *In re Perry*, 882 F.2d 534, 538 (1st Cir.1989), offers especially inhospitable soil for further liberalization of that "generous formulation." Stretching the catalyst theory to new, untested lengths is not called for in this case. *Cf. id.* at 544 n. 8 (noting that shifting of attorneys' fees is much less expansively expressed under EAJA than under civil rights statutes); *Sierra Club v. Secretary of the Army*, 820 F.2d 513, 516–17 (1st Cir.1987) (same).

### D. *Another Approach.*

There is yet another avenue which plaintiff urges us to explore. The alternative contemplates a case-specific method whereby the district court must review each disability-termination suit to see if, in its judgment, the claimant "was going to win anyway," *Hendricks*, 847 F.2d at 1261 (Easterbrook, J., concurring); *see also Sherman*, 647 F.Supp. at 702–03. After due consideration, we believe plaintiff's suggestion must be rejected in favor of a bright-line rule such as that adopted by the Seventh and Eighth Circuits.

The essential fallacy which underlies the case-specific approach is that it confuses EAJA's two prongs. EAJA requires *both* that the private litigant prevail *and* that the government's position lack substantial justification. *See* 28 U.S.C. § 2412(d)(1)(A), quoted *supra* at p. 398. Divining hypothetical error is in our estimation more properly to be considered on the "substantial justification" furculum of the standard. Using it to overcome the prevailing party hurdle double counts and also blurs the distinction between the two prongs in a way which frustrates Congress' careful draftsmanship. *Cf. Brown*, 747 F.2d at 882 (warning, in an EAJA context, against subsuming these "two distinct issues [prevailing party/substantial justification] under one general heading").[6] In short, the

---

6. We note, too, that under the catalyst theory a claimant's showing of causal relationship between suit and relief "is only half of [the] bat-

tle." *Nadeau*, 581 F.2d at 281. If the government "acted gratuitously," that is, if Guglietti's action could be considered "frivolous, unreason-

potential strength of a claimant's position on the substantial justification battleground cannot be allowed to obscure the threshold question of whether claimant can be said to have prevailed on the merits of her litigation.

We acknowledge that, from a purely equitable standpoint, plaintiff's suggested alternative has some obvious appeal. But, hard cases make bad law. The Court has repeatedly warned against permitting fee disputes to "spawn a second litigation of significant dimension." *Texas Teachers,* 109 S.Ct. at 1493; *see also Underwood,* 108 S.Ct. at 2549; *Hensley,* 461 U.S. at 437, 103 S.Ct. at 1941. On this basis, we have given weight to "considerations of judicial economy" in the EAJA context. *See McDonald,* 884 F.2d at 1480. The case-specific approach requires nothing less than the hypothetical relitigation of cases which, because of the Reform Act's passage, need not be

litigated at all. It thus countervails the Court's warning and disserves conservationist ends by needlessly squandering scarce judicial resources. A bright-line rule better comports with the Court's guidelines and with the congressional purpose undergirding the EAJA.

### III

We need go no further.[7] We are satisfied that EAJA's doctrinal structure and the weight of better-reasoned authority counsel for reversal in this instance. On the record before us, any material alteration in the parties' legal relationship came about in a manner distinct from what "Congress sought to promote in the fee statute." *Texas Teachers,* 109 S.Ct. at 1493. Hence, plaintiff cannot be deemed a "prevailing party" as EAJA uses that term.

*Reversed.*

able, or groundless," *id.* (citation omitted), her suit could not be deemed a catalyst. Thus, appellee's case-specific approach also conflates the catalyst theory's two prongs.

**7.** We neither reach, nor take any view of, questions such as whether (1) the government's orig-

inal decision to terminate Guglietti's benefits was "substantially justified," or (2) "special circumstances" exist which would make a fee award "unjust." *See* 28 U.S.C. § 2412(d)(1)(A).

# Social Security Notice

APPENDIX

From: Department of Health and Human Services
Social Security Administration.

Frances Guolietti
13 Rose Street
North Providence, RI    02911

Date:    June 18, 1987

Claim Number:    039 14 7407

We're writing to tell you that we've finished the review of our decision that you were no longer disabled as of October 1980. We found that you were still disabled and that your payments should have continued.

HOW THIS AFFECTS YOUR CHECKS

If you're getting checks, those checks will continue.

If you're not getting checks, or if you're due back checks, we'll write you soon about the money we owe you.

WE'LL REVIEW YOUR CASE AGAIN

The doctors and other trained personnel who decided that you were still disabled believe that your health may improve. Therefore, we'll review your case again in the future. We'll send you a letter before we start another review.

YOU MAY BE ABLE TO GET VOCATIONAL REHABILITATION

You may want to get in touch with your State Vocational Rehabilitation agency. They may be able to help you get training for a new job and find work.

THINGS TO REMEMBER

The decisions we made on your case are based on information we have now. If this information changes, it could affect your checks. For this reason, it's important that you report changes right away. Be sure to tell us about any of the following changes.

You return to work.

Your job, pay, or work expenses change, if you're working now.

Your doctor says your health is better.

You get workers' compensation or a public disability benefit, or it stops or changes.

IF YOU HAVE ANY QUESTIONS

If you have any questions, you should call, write, or visit any Social Security office. If you visit an office, please bring this letter. It will help us answer your questions.

072

BREYER, Circuit Judge (dissenting).

In 1978 the government began to pay the claimant social security disability benefits. In 1980 it terminated the benefits on the ground that the evidence showed she was not disabled. She sought judicial review, claiming that the termination was unlawful in the absence of a "medical improvement." *See Miranda v. Secretary of Health, Education & Welfare,* 514 F.2d 996, 998 (1st Cir.1975). While her claim was pending, Congress passed a statute requiring the government to apply a "medical improvement" standard in cases such as hers. *See* Social Security Disability Benefits Reform Act of 1984, Pub.L. 98–460, § 2, 98 Stat. 1794 (1984), 1794–97, *codified at* 42 U.S.C. § 423(f). Her case was remanded pursuant to that statute. *See* Pub.L. 98–460, § 2(d)(2)(C), 98 Stat. 1794, 1797 (1984). The government, applying the "medical improvement" standard, decided she should continue to receive benefits—the very result she sought. She now seeks reimbursement for her legal expenses. She is entitled to reimbursement if she was a "prevailing party," and the government's legal position was not "substantially justified." *See* 28 U.S.C. § 2412(d)(1)(A).

My basic disagreement with the court concerns the statutory words "prevailing party." The majority believes this is a case in which one cannot say the plaintiff "prevailed," but rather, at most, one might say she *"would have* prevailed" had she continued to press her legal action. That is to say, it may be a case in which this court would have remanded to the Social Security Administration for redetermination had the court decided the matter, but this court, in fact, did not decide the matter. It did not do so because an intervening outside act—indeed, an act of Congress itself—produced a remand (and eventual victory), the very result for which the claimant hoped.

In my view, the following circumstances make it proper, as a matter of ordinary English usage, as well as a matter of law, to say that the claimant "prevailed" in her legal action. First, she did get the relief she wanted. Second, her legal action was a necessary condition for her obtaining it.

That is to say, had she not filed her action when she did, the Social Security Administration's termination would have become final; and Congress's statute would not have resurrected her case. *See* Pub.L. 98–460, § 2(d)(2)(C), 98 Stat. 1794, 1797 (1984); *Hendricks v. Bowen,* 847 F.2d 1255, 1258 (7th Cir.1988); *Truax v. Bowen,* 842 F.2d 995, 997 (8th Cir.1988) (per curiam). Third, the outside event—the Congressional action—that brought her relief was not an unrelated, extra-judicial event. Rather, Congress acted, in part, because this claimant, and other claimants similarly situated, had filed lawsuits.

The "causal" role of such lawsuits (taken together) is suggested by expressed concern in Congress about the failure of the Social Security Administration to "follow U.S. Courts of appeals decisions with which it disagrees, either nationwide or within the circuit of the ruling." H.R.Rep. No. 618, 98th Cong., 2d Sess. 23, *reprinted in* 1984 U.S.Code Cong. & Admin. News 3038, 3060. The particular decisions that the Social Security Administration failed to follow included cases such as *Miranda*—cases that had enunciated a form of "medical improvement" standard. Indeed, the House Report stated:

The committee is most concerned about the impact of this policy on beneficiaries and claimants, and on their relationship to the social security program. If a circuit court rules on a given issue *such as medical improvement,* it is a foregone conclusion that subsequent appeals to that court on that issue will be successful. By refusing to apply the circuit court ruling, SSA forces beneficiaries and applicants to relitigate the same issue over and over again in the circuit....

The committee can find no reason grounded in sensible public policy to *force beneficiaries to sue in order to obtain* what has been declared by the Federal court as justice in a particular area. *Such a policy creates a wholly undesirable distinction between those beneficiaries with the resources and fortitude to pursue their claims, and those who accept the government's original denial*

*in good faith or because they lack the means to appeal their case.*

*Id.* at 3061–62 (emphasis added). *See* H.R. Conf. Rep. No. 1039, 98th Cong., 2d Sess. 37–38, *reprinted in* 1984 U.S.Code Cong. & Admin. News 3080, 3095–96 (although the conference version of the Benefits Reform Act contains no specific provision dealing with "non-acquiescence," the conference committee nonetheless expressed concern that the Social Security Administration's policy "forces beneficiaries to relitigate the same issue over and over again in the circuit, at substantial expense to both beneficiaries and the federal government.")

Had all claimants in the same position as the one before us brought their challenges to disability benefit termination policies in one large, class action suit, the relation between suit, Congressional action, and relief, would seem close enough to bring their case within the rule enunciated by this circuit in *Nadeau v. Helgemoe*, 581 F.2d 275, 279 (1st Cir.1978), namely that "when plaintiff's lawsuit acts as a 'catalyst' in prompting defendants to take action to meet plaintiff's claims, attorney's fees are justified despite the lack of judicial involvement in the result." *Id.* (citations omitted); *see Truax*, 842 F.2d at 997 (applying a "catalyst" test under EAJA); *cf. Harrington v. DeVito*, 656 F.2d 264, 266 (7th Cir.1981) (applying a catalyst test under 42 U.S.C. § 1988), *cert. denied*, 455 U.S. 993, 102 S.Ct. 1621, 71 L.Ed.2d 854 (1982).

Of course, all identical claimants did not bring one large lawsuit. Rather, many of them filed individual lawsuits. As a result of their separate filings, one cannot say that any *individual* case acted as a "catalyst." One cannot say that any *individual* legal filing led Congress to act. One cannot say that any *individual* case "caused" the ultimately favorable result. Yet, I do not think that fact makes a difference where the individual cases, *combined with a host of other similar cases,* did have a catalytic effect. One can say of a single soldier that he "prevailed in his military action" when he, along with five hundred other soldiers in the same unit, took the enemy hill. Similarly, I believe one can say

that this claimant "prevailed in her legal action" when she, along with many other similar claimants, bringing virtually identical *judicial* actions, helped convince Congress to pass the statute. *See* H.R.Rep. No. 618, 98th Cong., 2d Sess. 11, *reprinted in* 1984 U.S.Code Cong. & Admin. News 3038, 3048 ("[T]he combination of an apparently more restrictive policy and reviews of large numbers of beneficiaries have resulted in widespread complaints about [the Social Security Administration's] procedures. These policies have come under severe criticism in the Federal courts[;]" both the Ninth Circuit and other circuit courts have declared "[s]imilar 'medical improvement' standards.... [S]ection 101 of the bill establishes a clear 'medical improvement' standard.")

To hold this does not threaten any significant expansion of the notion of "catalyst," for the circumstance (no single lawsuit, but a group of *virtually identical lawsuits*, brings relief) would seem relatively rare. To hold this would seem consistent with the basic Congressional intent underlying the EAJA, namely to avoid discouraging "individuals ... from seeking review of ... unreasonable governmental action because of the expense involved in securing the vindication of their rights in civil actions." Equal Access to Justice Act, Pub.L. No. 96–481, tit. 2, § 202(a), 94 Stat. 2321, 2325 (1980). To hold the contrary risks creating the anomaly mentioned above, namely that recovery of legal costs turns on whether claimants were, or were not, able to consolidate their separate claims into a single suit.

Were a majority of this panel to agree that the claimant is a "prevailing party," we should then remand this case for reconsideration of whether or not the government's legal position—both when it terminated the claimant's benefits and when it chose to contest her appeal of the termination, *see* 28 U.S.C. § 2412(d)(2)(D) (" 'position of the United States' means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based"),—was "substantially

justified." There is some reason to think that it was not. The Administration reversed itself and provided benefits while applying the "medical improvements" standard contained in the new statute. That statute compromises (a) the need for accuracy in making certain that disability benefit recipients are truly disabled, and (b) the need to avoid continuous relitigation of matters once decided. It does so by permitting the Social Security Administration to terminate previously granted disability benefits if (a) there is medical improvement and the claimant can now work, or (b) there is significant evidence showing that the claimant was not disabled in the first place. To be more specific, the statute permits termination if (a) the claimant has medically improved and can now work, or (b) advances in medical or vocational therapy will permit the claimant to work, or (c) new or improved diagnostic techniques show that the claimant was not really disabled, or (d) new or old evidence shows that a "prior determination was in error." *See* 42 U.S.C. § 423(f)(1)–(4). It is difficult to see how the Administration could have concluded that this standard *requires* it to pay benefits, but could also *reasonably* have concluded that preexisting First Circuit law did *not* require it to pay benefits. That is because preexisting First Circuit law, as enunciated in *Miranda*, 514 F.2d at 998, seemed to apply at least as strict a standard as the new statute (indeed, perhaps in respect to the need for *new* evidence, a stricter standard). *Miranda* says,

> [O]nce having found a disability, the Secretary may not terminate the benefits without substantial evidence to justify so doing. This will normally consist of current evidence showing that a claimant *has improved* to the point of being able to engage in substantial gainful activity; but it might also consist of evidence that claimant's condition is not as serious as was first supposed.[*]

[*] We reject the broad rule said by the district court to be established in *Pedroza v. Secretary,* 382 F.Supp. 916 (D.P.R.1974), that the Secretary cannot take into account medical evidence considered earlier when the disability was first established. *It would be wrong for the Secretary to terminate an earlier finding of disability*

*on no basis other than his reappraisal of the earlier evidence.* However, many impairments are difficult to diagnose; a proper diagnosis may require reference to the cumulative medical history.

*Id.* (emphasis added).

Of course, it is conceivable that, had Congress not acted, this court would have modified its *Miranda* standard in light of the Administration's adoption of regulations that said that "eligibility for cash benefits and for a period of disability will end" when "the evidence in [the claimant's] file shows that [he is] able to do substantial gainful activity." 20 C.F.R. §§ 404.1594, 416.994 (1981). *See Chevron U.S.A., Inc. v. NRDC,* 467 U.S. 837, 843, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984) (when administrative agency has adopted a regulation implementing a statute, courts should ask only whether the regulation "is based on a permissible construction of the statute"). But, major modification seems unlikely since almost every other circuit had held that the Social Security Administration could not, consistent with its basic statute, interpret this regulation to permit termination in the absence of any evidence showing that the claimant's medical condition had improved (or that the original disability determination had been erroneous). *See, e.g., Rush v. Secretary of HHS,* 738 F.2d 909, 915–16 (8th Cir.1984); *DeLeon v. Secretary of HHS,* 734 F.2d 930, 936–37 (2d Cir.1984); *Turner v. Heckler,* 592 F.Supp. 599, 606 (N.D.Ind.1984); *Holden v. Heckler,* 584 F.Supp. 463, 474 (N.D.Ohio 1984); *Doe v. Heckler,* 576 F.Supp. 463, 470–72 (D.Md.1983); *Graham v. Heckler,* 573 F.Supp. 1573, 1578–80 (N.D.W.Va.1983), *appeal dismissed,* 742 F.2d 1448 (4th Cir. 1984); *Trujillo v. Heckler,* 569 F.Supp. 631, 634 (D.Colo.1983); *see also Vaughn v. Heckler,* 727 F.2d 1040, 1043 (11th Cir. 1984) (applying medical improvement standard on review of termination decision made after "current evidence" regulations went into effect); *Daring v. Heckler,* 727 F.2d 64, 68–69 (3d Cir.1984) (same); *Person v. Secretary of HHS,* 578 F.Supp. 190, 192 (E.D.Mich.1984) (same). *But see Hill v. Heckler,* 592 F.Supp. 1198, 1208–13 (W.D. Okla.1984) (disability beneficiaries not enti-

tled to preliminary injunction against use of "current evidence" standard because little likelihood of succeeding on the merits of their claim that use of the standard was unlawful).

Ultimately, the matter may come down to determining how obviously wrong the Administration was in terminating the claimant's benefits. What had changed since the initial award? Was there any medical improvement? Had diagnostic or therapeutic techniques changed? Was there new evidence? To what extent did review of the initial decision to grant suggest that the initial decision was clearly wrong? These are matters in respect to which we should not second guess the district court. *See Pierce v. Underwood*, 108 S.Ct. 2541, 2546–49 (1988) (district court's determination of whether government's position was "substantially justified" reviewed only for abuse of discretion). Here, however, the magistrate's reason for finding the government's legal position "without substantial justification" consisted of the following:

> Under the old standard, the Secretary had to find the plaintiff's disability had ceased in order for disability benefits to be terminated. However, under the new standard, all the Secretary had to demonstrate was that there was some medical improvement. The Secretary could find no medical improvement thereby contradicting its previous decision.

Magistrate's Memorandum and Order, *Guglietti v. Bowen*, No. 82–0369T (October 14, 1988). These three sentences do not seem directly related to what I believe to be the relevant questions.

I conclude that we should find that the claimant is a "prevailing party," but we should also remand for reconsideration of the issue of "substantial justification."