**Antonio PARIS, Odessa Hayes, Lucille Annette Dee and Theresa Gomes, on behalf of themselves and all others similarly situated**

v.

**UNITED STATES DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT and Corcoran Management Co., Inc.**

Civ. A. No. 86–0624–T.

United States District Court, D. Rhode Island.

June 4, 1992.

John W. Dineen, Providence, R.I., for plaintiffs.

Stuart M. Gerson, Asst. Atty. Gen., Lincoln C. Almond, U.S. Atty., Everett Sammartino, Asst. U.S. Atty., Rhode Island, Arthur R. Goldberg, Herbert E. Forrest, Kim Kendrick, Richard M. Price, Dept. of Justice, Civ. Div., Washington, D.C., Robert F. Cormier, McCullough, Stievator & Polvere, Charlestown, Mass., Mark E. Liberati, Providence, R.I., for defendants.

## MEMORANDUM AND OPINION

TORRES, District Judge.

This case is before the Court for review of a Magistrate Judge's "Order" granting the plaintiffs' motion for an award of attorneys' fees and costs against the United States Department of Housing and Urban Development ("HUD") and denying their motion for such an award against Corcoran Management Co., Inc. ("Corcoran") pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412 (1988) ("EAJA"). For reasons hereinafter stated, the Court finds that the motion was properly denied as to Corcoran but erroneously granted as to HUD.

## BACKGROUND

The facts giving rise to this litigation are set forth in *Paris v. Department of Housing and Urban Development*, 843 F.2d 561 (1st Cir.1988) (*"Paris"*). They may be summarized as follows.

In 1986, the plaintiffs were the heads of families on a waiting list for admission into the Chad Brown Housing Project, a HUD subsidized public housing project for "lower income families" that was owned by the Providence Housing Authority and managed by Corcoran. In order to achieve a mix of lower income tenants, Corcoran, acting pursuant to HUD regulations, adopted a plan dividing eligible applicants into three groups, namely, very low income, low income, and moderate income. Under that plan, approximately one-third of the apartments in the project were earmarked for each group. Consequently, when an apartment set aside for any one of those groups became available, it was given to the first family on the waiting list falling within that classification. In many cases that required "skipping over" fami-

lies more senior on the list that were in different income groups.

The plaintiffs brought this suit on behalf of all "very low income" families on the waiting list alleging that the "skip over" provisions of the plan violated the United States Housing Act of 1937 ("Housing Act"), 42 U.S.C. §§ 1437 et seq. (1982 & Supp. III 1985); the Fair Housing Act, 42 U.S.C. §§ 3601 et seq. (1982) and the Due Process and Equal Protection Clauses of the United States Constitution. Chief Judge Boyle issued a preliminary injunction preventing the defendants from applying the tenant selection plan on the ground that its income-mixing provisions violated the Housing Act and, in particular, 42 U.S.C. § 1437d(c)(4)(A). Because of that determination, Judge Boyle did not reach any of the alternative theories advanced by the plaintiffs.

In any event, the plaintiffs' victory was short lived. On appeal, the First Circuit held that the regulations authorizing the plan were within the authority conferred upon HUD by the Housing Act. Accordingly, it vacated the preliminary injunction. *Paris, supra.*

Several months after the First Circuit's opinion was issued, Congress amended § 1437d to expressly prohibit the selection of families for residence in public housing projects "in an order different from the order on the waiting list for the purpose of selecting relatively higher income families for residence." *Stewart B. McKinney Homeless Assistance Amendments Act of 1988*, Pub.L. No. 100–628, § 1001(b), 1988 U.S.C.C.A.N. (102 Stat.) 3263 (current version at 42 U.S.C.A. § 1437d(c)(4)(A) (Supp. 1991)). As a result of that amendment, the defendants deleted the "skipping over" provision from the Chad Brown Tenant Selection Plan and the plaintiffs voluntarily dismissed their suit pursuant to Federal Rule of Civil Procedure 41(a)(2).

After the dismissal, the plaintiffs filed a motion for an award of attorneys' fees and costs incurred in connection with this litigation. That motion was referred to a Magistrate Judge who, as already noted, entered an Order granting the motion as to HUD but denying it as to Corcoran. The case is now before the Court on HUD's appeal and the plaintiffs' cross appeal from that Order.

## STANDARD OF REVIEW

There is some question regarding the standard under which the Magistrate Judge's "order" must be reviewed. That standard varies depending on the nature of the matter referred. Under 28 U.S.C. § 636(b)(1)(A), a magistrate judge may "hear and determine any *pretrial* matter" other than those motions specifically enumerated in the statute (e.g., dispositive motions). 28 U.S.C. § 636(b)(1)(A) (emphasis added). In such cases, the district judge reviews the magistrate judge's order pursuant to a "clearly erroneous or contrary to law standard." *Id.*

Under § 636(b)(1)(B), a magistrate judge may be designated "to hear and to submit ... proposed findings of fact and recommendations for the disposition" of motions excepted by subsection (A); "applications for *posttrial* relief" in *criminal* cases; and prisoner petitions. 28 U.S.C. § 636(b)(1)(B) (emphasis added). In those cases, the district judge makes a "de novo" determination with respect to any findings or recommendations to which objection is made. 28 U.S.C. § 636(b)(1).

That does not mean that referrals to a magistrate judge are limited to those matters described in subsections (b)(1)(A) and (b)(1)(B). Subsection (b)(3) contains an omnibus provision that permits assignment to a magistrate judge of "such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3). Unfortunately, the statute does not prescribe the standard of review applicable to determinations made under subsection (b)(3).

In this case the Order referring the plaintiffs' motion to the Magistrate Judge failed to specify the statutory subsection pursuant to which the referral was being made. Accordingly, the Magistrate Judge treated it as a referral under subsection (b)(1)(A). However, the Court concludes that it

should be treated as a referral under subsection (b)(3).

By its terms, subsection (b)(1)(A) applies only to *pretrial* matters. A motion for attorneys' fees made after litigation is concluded cannot be described as a *pretrial* matter. Moreover, subsection (b)(1)(A) specifically excludes "dispositive" motions that could terminate the litigation (i.e., motions for judgment on the pleadings, summary judgment and to dismiss) and motions that may directly affect the parties' substantive rights (i.e., motions for injunctive relief). A petition for attorneys' fees closely resembles those motions because it requires an adjudication as to whether or not monetary relief should be awarded. Such an adjudication, in effect, disposes of that aspect of the litigation and directly affects the substantive rights of the parties. *See West v. Redman*, 530 F.Supp. 546, 548 (D.Del.1982) (award of statutory attorneys' fees essential to full disposition of prisoner's petition and therefore subject to "de novo" review under § 636(b)(1)(B); *contra, Johnson v. Old World Craftsmen, Ltd.*, 638 F.Supp. 289 (N.D.Ill.1986) (post trial motion for attorneys' fees can be considered "pretrial" because it is not related to trial and does not affect the parties' substantive rights.). Indeed, unlike the matters clearly encompassed by section (b)(1)(A), a determination with respect to attorneys' fees is appealable by the aggrieved party.

Subsection (b)(1)(B) extends to those motions specifically excluded under (b)(1)(A) as well as to applications for posttrial relief by individuals convicted of *criminal* offenses. Since the plaintiffs' motion in this case does not fall into either category, it would appear that the proper basis for referral was subsection (b)(3). In any event, it makes no difference whether the referral in this case is treated as one pursuant to (b)(1)(B) or (b)(3). In either case, the standard of review is the same.

■ By providing for review of a magistrate judge's determination only to the extent that it is "clearly erroneous or contrary to law," subsection (b)(1)(A) limits a litigant's right to have his case decided by a district judge. Consequently, the reach of that provision should be narrowly construed. As already noted, a posttrial motion for attorneys' fees under EAJA is clearly unlike the kinds of nondispositive pretrial matters to which subsection (b)(1)(A) applies. It is much more like those dispositive matters directly affecting substantive rights that Congress obviously intended be reviewed in accordance with the "de novo" standard set forth in subsection (b)(1)(C). Therefore, that is the standard to be applied in this case whether the referral is treated as one under subsection (b)(1)(B) or (b)(3). *See Calderon v. Waco Lighthouse for the Blind*, 630 F.2d 352, 355 (5th Cir.1980) ("power to refer dispositive matters under § 636(b)(3) carries with it a requirement of "de novo" determination by the district judge of the portions of the magistrate's findings to which a party objects.").

## DISCUSSION

The plaintiffs contend that they are entitled to an award of attorneys' fees and expenses against both HUD and Corcoran under EAJA. Alternatively, they argue that such awards should be made pursuant to the Fair Housing Act.

### I. *Equal Access to Justice Act*

The EAJA provides that:

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (1988).

In order to recover fees and expenses under that section, a litigant must establish that it is a "prevailing party" within the

meaning of the statute. *Guglietti v. Secretary of Health & Human Services*, 900 F.2d 397 (1st Cir.1990). If that hurdle is surmounted, the litigant is entitled to an award unless the government demonstrates that its position was substantially justified, *United States v. Yoffe*, 775 F.2d 447 (1st Cir.1985), or that special circumstances exist making an award unjust.

### A. The Prevailing Party Test

A litigant is deemed a "prevailing party" within the meaning of EAJA and other fee-shifting statutes if the litigant achieves a "material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Guglietti*, 900 F.2d at 398–99 (quoting *Texas State Teachers Ass'n v. Garland Independent School Dist.*, 489 U.S. 782, 109 S.Ct. 1486, 1493, 103 L.Ed.2d 866 (1989)). Such alteration may be accomplished in either of two ways. The litigant may succeed on the merits with respect to a "significant issue in litigation which achieves some of the benefit ... sought in bringing suit." *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978). Alternatively, the litigant may effect such an alteration by merely bringing a suit that "acts as a 'catalyst' in prompting defendants to take action to meet plaintiff's claims ... despite the lack of judicial involvement in the result." *Nadeau*, 581 F.2d at 279 (citations omitted).

### 1. Success on the Merits

■ In this case, the plaintiffs did not succeed on the merits with respect to any issue in the litigation. As the Magistrate Judge noted, the only issue addressed was whether the "skip over" provisions of the Tenant Selection Plan violated 42 U.S.C. § 1437d(c)(4)(A) as it existed prior to the 1988 amendment.

Although the plaintiffs won on that issue at the District Court level, they were unsuccessful on appeal. Therefore, they did not achieve the kind of "bottom-line litigatory success" that is required to qualify as a "prevailing party." *Guglietti*, 900 F.2d at 399, 400. To put it another way, the desired result was obtained "not because of

plaintiff's litigatory accomplishment but 'because Congress mandated reconsideration ... under a newly enacted standard.' " *Id.* at 400.

### 2. Catalytic Effect

■ In order for the plaintiffs' law suit to be deemed a catalyst that prompted the defendants to take the desired action, there must be a dual showing that there was "a causal connection between the litigation and the relief obtained" and that the defendants "did not act gratuitously." *Guglietti*, 900 F.2d at 401 (citing *Nadeau*, 581 F.2d at 280–81).

The plaintiffs in this case have failed to satisfy the first of those requirements. As the First Circuit has said:

> To be regarded as a catalyst, a suit need not be the sole cause of the fee-target's actions, but it must be a competent producing cause of those actions in at least some measurable, significant degree.

*Guglietti*, 900 F.2d at 401. In other words, "the plaintiff's suit ... [must be] a necessary and important factor in achieving" the result. *Nadeau*, 581 F.2d at 280–81.

In this case, the plaintiffs have failed to establish that this lawsuit prompted the defendants to modify the Chad Brown Tenant Selection Plan. The plaintiffs assert that their suit precipitated the 1988 amendment to § 1437d(c)(4)(A). They rely on a statement in the Conference Committee Report that the amendment "is necessary in light of the decision in *Paris v. HUD*, 843 F.2d 561." H.R.Conf.Rep. No. 1089, 100th Cong., 2d Sess. 92 (1988), *reprinted in* 1988 U.S.C.C.A.N. 4395, 4475–4476. That statement, they contend, makes this case clearly distinguishable from *Guglietti* where a similar argument was rejected on the ground that the lawsuit there was only one of many that led Congress to amend the law. *Guglietti*, 900 F.2d at 401–402.

However, that contention falls short of the mark. Assuming *arguendo* that *Paris* motivated Congress to enact the 1988 amendment does not establish this lawsuit as the cause of the defendants' change of position. On the contrary, it is clear that

the defendants deleted the "skipping over provisions" because Congress altered the statutory scheme rather than because of any reassessment triggered by this litigation. In fact, acceptance of the plaintiffs' premise would indicate that Congress acted precisely because the plaintiffs' lawsuit had *not* prompted the defendants to change their position. As the Court said in *Guglietti:*

> The Secretary did not reinstate [claimant's] benefits because the Secretary wanted to compromise a dispute or because he became convinced that his prior position was unprincipled. Rather, the Secretary reinstated [claimant's] benefits because Congress mandated reconsideration of all such currently pending claims under a newly enacted standard. Admittedly, as the court noted in *Truax* [*v. Bowen*, 842 F.2d 995, 997 (8th Cir.1988) ], [such] claimants ... would not have been entitled to disability benefits if they had not pursued fully their legal remedies. But only in a hypertechnical sense does this make [claimant's] lawsuit the "cause" of his victory. The proximate cause of his victory was the congressional enactment of a standard under which he was entitled to relief.

*Guglietti*, 900 F.2d at 401 (quoting *Hendricks*, 847 F.2d 1255, 1258 (7th Cir.1988)).

In short, the plaintiffs in this case achieved the desired result not because their lawsuit prompted the defendants to alter their position but rather because Congress changed the law.

### B. Substantial Justification

■ Even if the plaintiffs could pass the prevailing party test, their claim would fail because HUD has demonstrated that its position was "substantially justified." The standard for determining whether the government's position is substantially justified within the meaning of EAJA is one of "reasonableness." *Yoffe*, 775 F.2d at 449. The pertinent inquiry is whether the position taken is "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 564, 108 S.Ct. 2541, 2549, 101 L.Ed.2d 490 (1988). The

test "represents a middle ground between an automatic award of fees to a prevailing party and an award made only when the government's position was frivolous." *Yoffe*, 775 F.2d at 450. Consequently, the government is not automatically liable when it loses. Nor is it automatically absolved from liability when it enjoys limited success or prevails at an earlier stage of the litigation. *Id.* at 450.

In this case, HUD prevailed on the only issue litigated up to the point at which the litigation terminated. Its position was upheld as correct by the First Circuit. Therefore, by definition, that position was both reasonable and "substantially justified." Moreover, once the 1988 amendment was adopted, HUD promptly modified its regulations to conform to the new statutory requirements. Nothing more is required by EAJA.

### II. *Alternative Theories*

The plaintiffs suggest that they are entitled to attorneys' fees under EAJA because they would have prevailed against HUD on other grounds if the case had been litigated to a conclusion. Thus, they contend, among other things, that HUD violated the Administrative Procedures Act by altering its own regulations without notice and opportunity for comment and that its policy had a disparate impact on minorities and females thereby violating the Fair Housing Act. In so doing, they advocate the kind of "case-specific" approach rejected in *Guglietti*. Despite the plaintiffs' protestations to the contrary, such an approach "requires nothing less than the hypothetical relitigation of cases which because of the [amendment's] passage need not be litigated at all." *Guglietti*, 900 F.2d at 403.

■ In addition to their EAJA claim, the plaintiffs assert that they are entitled to attorneys' fees and costs from both defendants under the Fair Housing Act, 42 U.S.C. § 3613(c), and the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. However, their argument consists of nothing more than a statement that those statutes permit an award of attorney's fees to a prevailing party.

What the plaintiffs fail to take into account is the requirement that a litigant prevail on claims brought pursuant to *those statutes.* Thus, success on a Fair Housing Act claim is a *sine qua non* to the recovery of attorneys' fees under that statute. Similarly, a party is not entitled to attorneys' fees under § 1988 unless that party prevails on a civil rights claim.

As already noted, in this case, the plaintiffs have not prevailed on any claim. Moreover, the relief they obtained resulted from an amendment to the Fair Housing Act and had nothing to do with their claims under either the Fair Housing Act or the Civil Rights Act. Consequently, there is no basis for their claim for an award of attorneys' fees under either of those statutes.

## CONCLUSION

For all of the foregoing reasons, the plaintiffs' motion for attorneys' fees and costs is denied in its entirety as to both defendants.

IT IS SO ORDERED.